## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOE ADAM RAMIREZ | § | |
|     TDCJ-CID #636417 | § | |
| | § | |
| VS. | § | C.A. NO. C-07-048 |
| | § | |
| DR. ROMANO DELCORE, ET AL. | § | |

### MEMORANDUM AND RECOMMENDATION TO DISMISS ACTION

This case was filed as a civil rights action by a state prisoner pursuant to 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless of whether he prepays the entire filing fee or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam), cert. denied, 527 U.S. 1041 (1999). Plaintiff's *pro se* complaint must be read indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that plaintiff's action be dismissed for failure to state a claim and/or as frivolous.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I.  JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.  BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and is currently incarcerated at the Ferguson Unit in Midway, Texas.  By and through his father as next friend, plaintiff filed this lawsuit on December 27, 2006, alleging that Dr. Romano Delcore, the Nueces County Sheriff, Christus Spohn Hopital, and "other officials" had violated his First, Eighth, and Fourteenth Amendment rights by failing to produce on demand copies of his medical records.  On that same date, plaintiff's father sought leave pursuant to Rule 17(c) of the Federal Rules of Civil Procedure to represent plaintiff's interest in this action.  (See D.E. 2).  Following an evidentiary hearing and consideration of plaintiff's TDCJ-CID medical records, it was recommended that the Rule 17(c) motion be denied (D.E. 14, 26), and on April 30, 2007, the District Court adopted the recommendation.  (D.E. 34).

On April 27, 2007, plaintiff, proceeding *pro se*, filed his amended complaint.  (D.E. 30).  A Spears[1] hearing was conducted on June 8, 2007.  The following allegations were made in plaintiff's original complaint, amended complaint, or at the hearing.[2]

Between June 11, 1992 and March 10, 1993, plaintiff was in the custody of the Nueces County Jail.  During that time, plaintiff suffered from hallucinations.  He was seen by Dr. Delcore who diagnosed him with "severe mental handicaps."  In July 1992, plaintiff was started on two antipsychotic medications.

On August 3, 1992, plaintiff pled guilty to felony charges in seven criminal actions, each styled The State of Texas v. Joe Adam Ramirez, all in the 117th Judicial District Court of Nueces County, Texas.[3]  The trial court sentenced plaintiff to various terms of incarceration, ranging from seven to thirty years.  Plaintiff did not appeal his convictions.

On October 7, 1994, plaintiff filed a state habeas corpus application.  Ex parte Ramirez, Appl. No. 27-392-01.  He did not raise any competency issues in that proceeding, nor did he argue that his counsel was ineffective in failing to raise the competency issue.  On

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

[2] In addition, reference is made to plaintiff's earlier filed federal habeas corpus petitions, Civil Action No. C-95-313 and Civil Action No. C-97-673.

[3] Plaintiff pled guilty to:  third degree felony theft (Cause No. 92-CR-1128-B); burglary of a vehicle (Cause No. 91-CR-1316-B); burglary of a habitation (Cause No. 91-CR-2041); theft from a person (Cause No. 92-CR-1020-B); and three counts of aggravated robbery (Cause Nos. 92-CR-1021-B; 92-CR-1066-B; 92-CR-1067-B).  (See C.A. No. C-97-673, D.E. 7, Ex. A, copies of judgments entered in above listed cause numbers).

December 7, 1994, the Texas Court of Criminal Appeals denied his application without written order.  Id. at cover.

On July 25, 1995, plaintiff filed a federal habeas corpus petition with this Court in Civil Action No. C-95-313.  He did not raise any competency issues or allege ineffective assistance of counsel in that proceeding.  (See C.A. No. C-95-313, D.E. 7, order of dismissal discussing plaintiff's habeas claims).  This Court rejected his claims and entered final judgment against him on November 13, 1995.  Id. at D.E. 7, 8.

Plaintiff filed a second state habeas corpus application on August 26, 1996, and it was dismissed on October 16, 1996.  Ex parte Ramirez, Appl. No. 27-392-02 at 2, cover.  He filed a third state habeas corpus application on April 3, 1997, and it was denied without written order on May 21, 1997.  Ex parte Ramirez, Appl. No. 27-392-03 at 2, cover.   Plaintiff testified at his evidentiary hearing that he did raise competency issues in at least one of these petitions.

On December 30, 1997, plaintiff filed a second federal habeas corpus petition with this Court in Civil Action No. C-97-673.   In this second petition, plaintiff raised the competency issue.  (See C.A. No. C-97-673, D.E. 1 at 4 and attached memorandum at 8).  In particular, he argued that his counsel was ineffective for failing to raise the mental competency issue when he pled guilty.  Id.  As proof of his mental incompetence at the time he pled guilty, he attached a copy of a "Diagnostic and Evaluation Psychological Examination," dated March 25, 1993, in which it was noted that he complained of

experiencing auditory hallucinations.[4]  Id. at Ex. H.  In addition, plaintiff offered a TDCJ-CID clinic note dated January 27, 1994 through March 2, 1994, in which a psychiatrist, Dr. Howard Lancaster, lists the following possible diagnoses: polysubstance abuse; possible paranoid schizophrenia with overlying depression; intermittent explosive disorder; organic personality disorder; sociopathic personality traits; schizoid personality.  Id. at Ex. I.  This record also indicates that, as of February 24, 1994, plaintiff was prescribed Klonopin and Elavil.[5]  Id.  By order and final judgment entered June 7, 1998, this Court dismissed plaintiff's second federal petition as successive.  28 U.S.C. § 2244(b)(2).  To date plaintiff has not requested permission from the Fifth Circuit to pursue a successive petition.

Beginning in July 2002,  plaintiff attempted to get copies of his medical records from the Nueces County Jail, Spohn Memorial Hospital, and Dr. Delcore for purposes of challenging his state court convictions.  In particular, plaintiff wanted the medical records to challenge the voluntariness of his guilty pleas based upon mental incompetence.  On July 29, 2002, plaintiff signed a release of information authorizing the TDCJ-CID Health Services to obtain his medical records from the Nueces County Jail; however, the County Jail did not respond to the request.  Again on January 28, 2003 and March 15, 2003, he signed TDCJ-CID Health Services authorization forms to release his medical records, but the County Jail

---

[4] It is apparent that the psychological examination consists of more than one page; however, plaintiff offered only the first page as an exhibit.  The single page is not signed and does not include either a definitive diagnosis or opinion as to plaintiff's mental status as of August 3, 1992, when he pled guilty.  (See C.A. No. C-97-673, D.E. 1, Ex. H).

[5] Klonopin is a benzodiazepine used to treat anxiety and seizures; Elavil is a tricyclic antidepressant.  (See http://www.fda.gov).

failed to respond.  In July, 2003, he wrote to the Nueces County Hospital District.  A representative of the Hospital District, Ms. Penny Hasteger, related that the hospital could not find his medical records, and she advised him to contact Dr. Delcore directly.

In December 2003, plaintiff wrote to the Texas Medical Association, and in January 2004, he wrote to the Texas Board of Medical Examiners seeking assistance in getting copies of his medical records.  On November 17, 2004, the warden of plaintiff's prison unit at the time wrote to the Nueces County Jail.  The Jail responded that it did not have any records.  Again in April and May, 2005, plaintiff attempted to get his records, but he was not successful.

Plaintiff claims that, without the medical records, he is denied the opportunity "to obtain evidence which will show his mental condition as determined by the defendants between June 11, 1992 through March 10, 1993."  He testified that a state habeas corpus petition was denied because "he had no proof of his mental illness or incompetency."  He claims that defendants' failure to turn over the evidence amounts to a denial of his access to the courts, a violation of his due process rights, and a violation of his right to be free from cruel and unusual punishment.  Plaintiff also claims that the Nueces County Sheriff failed to train properly its employees to turn over records when requested.

Plaintiff seeks a declaratory judgment, $4,000,000 in compensatory damages, $2,000,000 in punitive damages, and injunctive relief requiring the Nueces County Sheriff to promulgate proper policies regarding the production of medical records and to train properly Nueces County personnel regarding those policies.  (D.E. 30 at p. 4).

### III.  DISCUSSION

**A.      Legal standard.**

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted.  42 U.S.C. § 1997e(c)(2).  "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995).  An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief.  Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002).  The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed.  Id.

**B.      First Amendment – Denial of access to the courts.**

Plaintiff claims that defendants' refusal to produce his medical records amounts to a denial of access to the courts.

Prisoners have a constitutionally protected right of access to the courts.  See Lewis v. Casey, 518 U.S. 343, 360 (1996) (citing Bounds v. Smith, 430 U.S. 817, 821 (1977)).  The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  Lewis, 518 U.S. at 356.  See also Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999) (the right provides a reasonable opportunity to file

7

nonfrivolous legal claims challenging convictions or conditions of confinement).  Because the right of access is not a "freestanding right," the plaintiff must demonstrate actual injury resulting from an alleged denial of access to the courts.  Lewis, 518 U.S. 351; Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999).  Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts.  Lewis, 518 U.S. at 349.

To meet the standing requirement, plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  Raines v. Byrd, 521 U.S. 811, 818 (1997) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984).  Plaintiff "must establish that he has a personal stake in the alleged dispute and that the alleged injury suffered is particularized as to him."  Id. at 819.  In particular, to succeed on a claim of denial of access to courts, plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial.  See Lewis, 518 U.S. at 356.  He must show "that his position as a litigant was prejudiced" as a direct result of the denial of access.  Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir. 1996).

Here, plaintiff argues that prejudice he suffers lies in his inability, without the records, to successfully demonstrate that he was mentally incompetent at the time he entered his pleas of guilty.  His claim fails as there is no legal avenue available to pursue non-frivolous post-conviction relief.

### 1.    State habeas relief

Plaintiff claims that his inability to obtain his medical records prevents him from filing future state habeas petitions challenging his competency.  But there is no legally permissible (non-frivolous) avenue left for plaintiff to pursue.  According to plaintiff, his state habeas petition challenging competency was denied on the merits. If he attempts to raise it again in a subsequent state petition, it will be denied as an abuse of the writ.  Tex. Code Crim. P. art. 11.07, § 4.[6]  That is, even if he had his medical records now, he would be prohibited from returning to state court to raise his competency claim because he already raised it and it was denied.[7]

### 2.    Federal habeas relief

Once the Court of Criminal Appeals denied plaintiff's 11.07 writ on the merits, he filed a § 2254 petition in federal court.  But because that petition was successive, it was dismissed without prejudice so that plaintiff could obtain permission of the Fifth Circuit Court of Appeals to file it.  Plaintiff did not seek permission from the Fifth Circuit to file a successive petition.  Were he to do so now, permission would be denied because the claim is barred by the one-year limitations period in 28 U.S.C. § 2244(d)(1)(D) (one year

---

[6]Texas' abuse of the writ doctrine prohibits a successive habeas corpus application unless the petitioner can establish that the current claims could not have been presented in the original petition.

[7]Plaintiff cannot establish that the 1997 denial of his state habeas corpus claim is the injury necessary to his denial of access to courts claim because at the time of the denial, plaintiff had made no attempts to obtain a copy of his medical records.  He did not make any attempts until 2002.

limitations runs from the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence).  Plaintiff testified that he became aware of his competency claim sometime in 1997, when an inmate on the Michael Unit advised him of such.[8]

Thus plaintiff has no legal avenue of relief, not because of the actions of the defendants when he began attempting to obtain the records in 2002, but because of his own failure to timely pursue this issue after he became aware of it in 1997.  As to plaintiff's denial of access to courts claim, Plaintiff will be unable to demonstrate any "injury" caused by defendants.

Because plaintiff is procedurally barred from pursuing post-conviction relief, he cannot demonstrate prejudice in any nonfrivolous litigation such that he fails to state a claim for denial of access to the courts.  Thus, it is respectfully recommended that plaintiff's denial of access to the courts claim be dismissed for failure to state a claim and as frivolous.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## C.    Eighth Amendment – Cruel and unusual punishment.

Plaintiff avers that the failure to produce his medical records amounts to cruel and unusual punishment.

---

[8]Had plaintiff timely sought and received permission from the Fifth Circuit Court of Appeals to pursue a successive petition, he could have requested assistance from the court, through discovery, to obtain his medical records.  Rule 6, Rules Governing § 2254 Cases.

The Eighth Amendment prohibits conditions that result in "unquestioned and serious deprivations of basic human needs" or that "deprive inmates of the minimal civilized measure of life's necessities." Hudson v. McMillian, 503 U.S. 1, 8-10 (1992); Rhodes v. Chapman, 452 U.S. 337, 347 (1981).   That is, a deprivation must be sufficiently serious to violate the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 834 (1994) ("only those deprivations denying the 'minimal civilized measure of life's necessities,' are sufficiently grave to constitute cruel and unusual punishment").   Like other Eighth Amendment claims, a conditions of confinement claim must satisfy both objective and subjective components. Hudson, 503 U.S. at 8.  For the objective component, "extreme deprivations are required to make out a conditions-of-confinement claim." Id. at 9.  And see Davies v.Scott, 157 F.3d 1003, 1006 (1998) (to prevail on an Eighth Amendment claim, the prisoner must objectively demonstrate a "sufficiently extreme deprivation" of a basic human need).  The second subjective component need not be examined if the plaintiff does not objectively demonstrate a sufficiently extreme deprivation of any minimal civilized measure of life's necessities. Davies, 157 F.3d at 1006.

Here, the refusal or failure of defendants to produce plaintiff's medical records, without more, does not amount to an Eighth Amendment violation.  See e.g. Scheanette v. Dretke, 199 Fed. Appx. 336 (5th Cir. 2006) (denial of televisions to death row inmates not cruel and unusual because watching television is not a life necessity or a basic human need); Davis, 157 F.3d at 1006 (three days confinement in filthy cell with blood on the walls and excretion on the floor does not constitute extreme deprivation for Eighth Amendment

purposes); <u>Jones v. Diamond</u>, 636 F.2d 1364, 1378 (5th Cir. 1986) (en banc) (minimal range of food choices does not implicate the Constitution).  Indeed, although inmates must receive adequate medical care while in custody, there is no constitutional requirement that they be given copies of their medical records.  <u>See</u> <u>Estelle v. Gamble</u>, 421 U.S. 97 (1976) (all that is constitutionally required is accessible medical care).  Plaintiff does not claim to need his medical records for a medical purpose, nor for any other purpose, the denial of which would amount to a deprivation.  As such, plaintiff fails to state a claim for cruel and unusual punishment because the deprivation of which he complains, failure to produce medical records, is not a sufficiently serious deprivation of minimal life necessities or any basic human need.  Thus, it is respectfully recommended that this claim be dismissed for failure to state a claim and as frivolous.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

**D.   Due Process.**

Plaintiff claims that his due process rights under the Fifth and Fourteenth Amendments were violated by defendants' refusal to turn over his medical records.  Plaintiff has cited to no authority and none was found to support his claim that he has a constitutionally protected right to review or obtain his prison medical records.

To the contrary, the only circuit court authority found was <u>Gotkin v. Miller</u>, 514 F.2d 125 (2nd Cir. 1975), where the court stated that it could "find no basis for the proposition that mental patients have a constitutionally protected property interest in the direct and unrestricted access to their records."  <u>Id.</u> at 128.  If a prisoner were engaged in litigation related to the records, presumably he would be entitled to them through the discovery

process. Ruhlmann v. Ulster County Department of Social Services, 234 F.Supp.2d 140, 183 (N.D.N.Y 2002)(Barring litigation, there is no right to access to medical records)(citing Gotkin, Id.).[9]

Plaintiff also has no liberty interest in his medical records.  In Sandin v. Conner, 515 U.S. 472, 484 (1995), the Supreme Court held that state created liberty interests are generally limited to freedom from the restraints that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

The Sandin court found that a prisoner's thirty-day placement in segregated confinement did not pose such a hardship as to implicate due process protections.  Sandin, 515 U.S. at 483.  However, where a prisoner was facing solitary confinement of an indefinite period coupled with a loss of parole consideration, the Court found due process was mandated.  Wilkinson v. Austin, 545 U.S. 209, 211 (2005).

In the case *sub judice*, plaintiff does not claim that defendants have denied him his medical records as a form of punishment.  Further, plaintiff fails to explain how defendants' refusal to produce his medical records poses a significant hardship on him.  Although he argues that he needs his medical records to establish that he was incompetent when he pled guilty, as discussed above, his avenues of post-conviction relief to pursue that claim are now

---

[9]An appeal has been filed in the Court of Appeals for the District of Columbia Circuit where a patient in a mental health facility is challenging his right to see his medical records. There plaintiff is arguing that he has a privacy right to see his medical records.  See Woodard v. John Howard Pavillion Review Board, No. 06-7091, 2007 WL 1700317 (D.C. Cir., Appellant's brief filed June 4, 2007).

closed.  Defendants' failure to produce the medical records, while frustrating, does not pose the type of atypical hardship that raises due process protections.  Plaintiff fails to state a due process claim, and it is recommended that this claim, too, be dismissed, for failure to state a claim and as frivolous.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

**E.    Municipal liability.**

Plaintiff also argues that the Nueces County Sheriff's office violated his constitutional rights by failing to train properly its employees to produce medical records when requested.

As a unit of local government, Nueces County cannot be held liable under 42 U.S.C. § 1983 for the actions of officers or employees on a theory of *respondeat superior*.  Monell v. Dep't of Social Services, 436 U.S. 658, 691(1978).  A municipality such as Nueces County is only liable under § 1983 for a deprivation of rights protected by the Constitution or federal law that is inflicted pursuant to official policy.  Monell, 436 U.S. at 694.  Thus, in addition to the underlying claim of a violation of rights, municipal liability under § 1983 requires proof of three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."  Cox v. City of Dallas, 430 F.3d 734, 748 (5th Cir. 2005) (citations omitted), cert. denied, 126 S. Ct. 2039 (2006).

An alleged failure to train employees can reflect a policy for purposes of liability under § 1983 where the failure to train represents a deliberate or conscious choice by a municipality.  See City of Canton v. Harris, 489 U.S. 378, 389 (1989).  Thus, "a municipality can, in some circumstances, be held liable under § 1983 'for constitutional violations resulting from its failure to train municipal employees.'"  Collins v. City of Harker Heights,

503 U.S. 115, 122 (1992) (quoting <u>City of Canon</u>, 489 U.S. at 380). Isolated violations are

not the persistent, often repeated constant violations that constitute official custom and

policy. <u>Fraire v. City of Arlington</u>, 957 F.2d 1268, 1278 (5th Cir. 1992).

As previously discussed in the context of plaintiff's denial of access to the courts

claim, plaintiff fails to demonstrate that he suffered harm or prejudice as the direct result of

an official policy. That is, even if he could establish that the Nueces County Sheriff's office

had an official policy to not train properly its clerks, resulting in the failure to produce

medical records when requested, he fails to show that he suffered any prejudice in any

nonfrivolous litigation. Without an underlying constitutional claim, plaintiff's failure to train

claim has no substance. <u>Cox</u>, 430 F.3d at 748. Thus, it is respectfully recommended that this

claim be dismissed for failure to state a claim and as frivolous.

## F.     Negligence

Nueces County responded to plaintiff's request for records with a statement that no

records could be located. Assuming the records existed at one time, plaintiff at most can

show negligence in the loss or destruction of those records. Negligence does not form the

basis for § 1983 liability. <u>Eason v. Thaler</u>, 73 F.3d at 1329.

## G.     Common law

Although not raised by plaintiff, there does exist in Texas a common-law right of

access to mental health records. <u>Hutchins v. Texas Rehabilitation Com'n</u>, 544 S.W.2d 802,

804 (Tex. Civ. App. 1976). However, a 1981 opinion from the Texas Attorney General's

office indicates that the common law right described in <u>Hutchins</u> does not apply to inmates

in TDCJ-CID.  Tex. Atty. Gen. Op. MW-381 at *1, 1981 WL 140066 (Tex. A.G.).  It is unclear whether the Attorney General's opinion would apply to plaintiff because the records he seeks are held by Nueces County rather than by TDCJ-ID.   Were plaintiff to seek the records under the Texas Open Records Act, Nueces County would be entitled to refuse the request because he is imprisoned in a correctional facility. TEX. GOV'T CODE § 552.028.  The statute provides that a governmental body is not required to accept or comply with a request for information from an individual who is imprisoned or confined in a correctional facility. It is not clear whether plaintiff could enforce his common-law right as to defendant Dr. Delcore, assuming Dr. Delcore is in possession of the records.

Because this is a state law claim and it is not at all clear that plaintiff would prevail were he to bring this type of claim, and because it is recommended that all federal claims be dismissed, it is not recommended that plaintiff be permitted to pursue this supplemental state law claim in federal court.  *See* 28 U.S.C. § 1367(c)(3) (permitting dismissal where the district court has dismissed all claims over which it has original jurisdiction); United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130 (1966) (if all federal claims are dismissed prior to trial, pendent state law claims should be dismissed without prejudice). To the extent plaintiff wishes to assert that he has a common law right to access his medical records, it is recommended that this claim be dismissed without prejudice so that plaintiff may pursue it in state court.

## IV.  **RECOMMENDATION**

Plaintiff has failed to state a claim upon which § 1983 relief can be granted. Accordingly, it is respectfully recommended that plaintiff's § 1983 claims for injunctive relief and/or damages be dismissed for failure to state a claim and as frivolous.   See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).  It is further recommended that to the extent plaintiff raised any state law claims, those claims be dismissed without prejudice.

Finally, it is recommended that, because this is a dismissal described by 28 U.S.C. § 1915(g) ( a "strike" for frivolous filing), that the Court instruct the Clerk to provide copies of the dismissal order to the parties, to the TDCJ–Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159, and to the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler Texas, 75702, Attention: Betty Parker.

Respectfully submitted this 3rd day of July, 2007.

_____

 B. JANICE ELLINGTON
 UNITED STATES MAGISTRATE JUDGE

17

`

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Article IV, General Order No. 02-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).